In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2499

UWM STUDENT ASSOCIATION, et al.,

*Plaintiffs-Appellants*,

*v.*

MICHAEL LOVELL, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-CV-1 — **J.P. Stadtmueller**, *Judge*.

ARGUED FEBRUARY 6, 2018 — DECIDED APRIL 25, 2018

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Student government elections rarely produce federal litigation. Wisconsin law, though, gives students at state universities rights to organize themselves and to run their governments, which have the power to spend substantial funds. Wis. Stat. § 36.09(5). The combination of those state-law rights and fiscal powers can produce

federal claims, even if the stakes are more modest than in most other disputes over state and local governance.

This case arises from a long-running feud between rival student governments at the University of Wisconsin-Milwaukee, commonly known as UWM. Plaintiffs are the UWM Student Association and several former and current UWM students. Plaintiffs allege a wide-ranging conspiracy to interfere with student governance. They allege that the UWM administration excluded certain students from student government by unseating the legitimately elected officers and replacing them over several years with a supposedly "puppet" student government with a similar name, the defendant Student Association at UWM. After considerable procedural fencing— resulting from plaintiffs' clumsy efforts to pursue an unmanageable complaint with 44 plaintiffs suing 37 defendants for claims spanning several years of student politicking—the district court dismissed the suit with prejudice. We affirm in part, reverse in part, and remand with instructions to reinstate certain claims, though it is clear that those claims are likely to encounter other substantial obstacles on remand.

## I. *Factual and Procedural Background*

The unwieldy, seven-count complaint is now in its fourth iteration. Plaintiffs are 44 former and current UWM students, although the complaint is vague about which students currently attend UWM and the capacity in which they attend. Among the 37 defendants are UWM's former chancellor and the University of Wisconsin Board of Regents, as well as numerous university administration officials and other students. Plaintiffs filed their lawsuit in Wisconsin state court, but defendants removed the case to the federal court. After removal,

the district court allowed the plaintiffs to amend their complaint twice.

In the operative version of the complaint, the first five counts are claims under 42 U.S.C. § 1983 alleging denials of due process and First Amendment retaliation and, in one count, a violation of one plaintiff's freedom of religion. The sixth count is a state-law claim alleging a violation of plaintiffs' right to organize under the Wisconsin statute on student governance at state universities, Wis. Stat. § 36.09(5). The seventh count alleges violations of Wisconsin's Public Records Law, Wis. Stat. §§ 19.31–19.39.

The district court granted defendants' motion to dismiss the case with prejudice. *UWM Student Ass'n v. Lovell*, 266 F. Supp. 3d 1121, 1139 (E.D. Wis. 2017). The court first dismissed claims against individual defendants whom plaintiffs renamed after the district court had already dismissed claims against them for lack of timely service. Next, the court dismissed the state-law right-to-organize claim based on state sovereign immunity. The court then dismissed all remaining claims for misjoinder.

## II. *Analysis*

To summarize our decision, we affirm the dismissal of the claims against the defendants who were not timely served with process. We also affirm the dismissal of the right-to-organize claim under state law. Any claims for damages on that theory have dropped out of the case, and any claims for injunctive or declaratory relief on that theory are moot. We must reverse, however, the dismissal with prejudice of the remaining claims for misjoinder. While we understand the district

court's frustration, the remedy for misjoinder is severance or dismissal without prejudice, not dismissal with prejudice.

Before digging into those issues, we address one preliminary matter. The case was first assigned to Judge Clevert, who retired while it was pending. The case was then assigned to Judge Stadtmueller, who made the final decision dismissing the case. Plaintiffs argue that Judge Stadtmueller erred by not certifying his familiarity with the record pursuant to Rule 63 of the Federal Rules of Civil Procedure after the case was assigned to him. Defendants point out correctly that by its terms, Rule 63 applies only when "a judge conducting a hearing or trial is unable to proceed." The rule applies when, for example, a judge has retired or died after hearing evidence but before issuing a decision. See *Marantz v. Permanente Medical Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 326–27 (7th Cir. 2012). Rule 63 does not apply here. There was no evidentiary hearing on defendants' motion to dismiss this version of the complaint, and there was no trial.

A.  *Dismissal of Previously Dismissed Defendants*

This case illustrates some of the issues that can arise when plaintiffs fail to serve defendants in cases removed from a state court to a federal court. Since the district court did not hold a fact-finding hearing on the issue, our review of the dismissal of a defendant for insufficient service of process is *de novo*. See *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011), citing *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). The issue of timely service is governed by 28 U.S.C. § 1448, which provides:

> In all cases removed from any State court to any
> district court of the United States in which any

one or more of the defendants has not been
served with process or in which the service has
not been perfected prior to removal, or in which
process served proves to be defective, such pro-
cess or service may be completed or new pro-
cess issued in the same manner as in cases orig-
inally filed in such district court.

This section shall not deprive any defendant
upon whom process is served after removal of
his right to move to remand the case.

The case was removed on January 2, 2015, and the opera-
tive complaint at the time of removal was the first amended
complaint. It named several defendants, including Dr. Mi-
chael Lovell, the Board of Regents, Heather Harbach, Pahoua
Xiong, Amy Watson, Suzanne Weslow, Anthony DeWees, Ni-
kolaus P. Rettinger III, Carla Greve, Angela Lang, and Dakota
Hall.

On September 30, 2015, the district court dismissed these
defendants because they had not been properly served with a
summons and the original or first amended complaint. *UWM
Student Ass'n v. Lovell*, No. 15–C–0001, 2015 WL 5795675, at *1
(E.D. Wis. Sept. 30, 2015). The court also granted plaintiffs
leave to file a second amended complaint. *Id.* at *3.

On October 13, 2015, plaintiffs filed their second amended
complaint, renaming all of the previously dismissed defend-
ants except Lang and Hall. Defendants filed a motion to dis-
miss that complaint. The district court held a hearing and
granted plaintiffs leave to file a third amended complaint.

And on December 1, 2015, plaintiffs filed their third amended complaint, again naming all of the previously dismissed defendants except Lang and Hall.[1] Although plaintiffs filed additional affidavits showing service following the third amended complaint, none of these affidavits establishes service on the previously dismissed defendants before or within 120 days of removal.

The district court found that plaintiffs had failed to serve timely the remaining previously dismissed defendants under either state or federal law. Because § 1448 provides that federal law governs these procedural issues after the removal, we focus on the federal standards.

Under the version of Federal Rule of Civil Procedure 4(m) in effect when this case was removed, plaintiffs had to serve

---

[1] Although Amy Watson and Suzanne Weslow are not named in the caption, they are named in the recitation of the parties. Instead of naming Watson and Weslow individually (followed by their office) in the caption, the caption now lists only their office, "UW-Milwaukee Public Records Custodian." It appears that the Public Records Custodian will remain as a defendant because plaintiffs appear to have served a holder of that office with the original complaint and because the district court did not dismiss the office as a defendant. *UWM Student Ass'n*, 266 F. Supp. 3d at 1131 (dismissing "the unserved Defendants who were dismissed by the Court in its September 30, 2015 order"). The captions of the first and second amended complaints name Anthony Proccacio, as Public Records Custodian, as a defendant. In an earlier order, the district court noted that the defendants represented to the district court that Proccacio was "properly served with the initial pleading in May of 2014." *UWM Student Ass'n*, 2015 WL 5795675, at *1. Also, adding to the confusion, the plaintiffs filed an affidavit indicating that at least one of the dismissed defendants, the Board of Regents, was served with the original complaint in 2014, but, in their opening brief on appeal, plaintiffs disclaim reliance on that affidavit.

defendants within 120 days of removal.[2] For cases originally filed in federal court, Rule 4(m)'s service clock starts on the date the complaint is filed. For removed cases, the combined effect of § 1448 and Rule 4(m) starts the clock on the date of removal. See *Cardenas*, 646 F.3d at 1004.

What happens when the plaintiffs fail to make timely service after the removal? Rule 4(m) requires the district court to extend the time "if the plaintiff shows good cause for the failure." The rule also permits the district court to extend the time even absent good cause. *Coleman v. Milwaukee Bd. of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002) (collecting cases and noting that "excusable neglect" may support extension), cited in 4B Wright & Miller, Federal Practice and Procedure § 1137 (4th ed.); see also Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (noting that rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown").

The case was removed to federal court on January 2, 2015, so defendants needed to be served by May 4, 2015.[3] Plaintiffs provide no evidence or argument that the previously dismissed defendants were served before that date, so they were not timely served under the federal rule.

To overturn the dismissal, the plaintiffs argue that the district court implicitly extended the service period by allowing

---

[2] Since December 1, 2015, Rule 4(m) has required service within 90 days after the complaint is filed.

[3] The 120 days ran on May 2, 2015. Because May 2 was a Saturday, the service period continued to run until the end of the following Monday. See Fed. R. Civ. P. 6(a)(1)(C).

an amended complaint. But filing an amended complaint does not restart the clock for serving defendants who are added to an amended complaint after having been dismissed from a prior one. See *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987) (court order permitting amended complaint did not trigger new 120-day period for service); see also 4B Wright & Miller, Federal Practice and Procedure § 1137 (4th ed.) ("Filing an amended complaint does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service. However, adding a new party through an amended complaint initiates a new timetable for service upon the added defendant.").

To be cautious, the district court considered the late service issue under both state and federal law, but federal law governs. See 28 U.S.C. § 1448. The court considered whether it would extend the period for service under Rule 4(m) or 6(b) and held that plaintiffs did not show "anything approaching excusable neglect or good cause." *UWM Student Ass'n*, 266 F. Supp. 3d at 1130. While the district court did not specifically state whether it would have been willing to exercise its discretion to allow late service under Rule 4(m) despite the lack of good cause, we are confident from the court's analysis and comments that the court would not have been at all inclined to do so, and that would not be an abuse of its discretion. Accordingly, we affirm the district court's dismissal of the claims against the remaining previously dismissed defendants, Dr. Michael Lovell, the Board of Regents, Heather Harbach, Pahoua Xiong, Amy Watson, Suzanne Weslow, Anthony DeWees, Nikolaus P. Rettinger III, and Carla Greve, for lack of timely service.

B.  *Dismissal of Right-to-Organize Claim*

We turn next to plaintiffs' right-to-organize claim under Wisconsin law, which the district court dismissed based on state sovereign immunity. *UWM Student Ass'n*, 266 F. Supp. 3d at 1131–36. We review a dismissal on sovereign immunity grounds as a dismissal for failure to state a claim. See *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 820 (7th Cir. 2016) (affirming treatment of motion to dismiss on sovereign immunity grounds as motion to dismiss for failure to state a claim). Our review of a district court's grant of a motion to dismiss for failure to state a claim is *de novo*, and we may affirm on any basis in the record. *Rocha v. Rudd*, 826 F.3d 905, 909 (7th Cir. 2016), quoting *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The claim should be dismissed, but because of mootness rather than sovereign immunity.[4]

Article III of the Constitution limits federal jurisdiction to actual cases or controversies "at 'all stages of review, not merely at the time the complaint is filed.'" *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016), quoting *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal citation omitted). "[I]f at any point the plaintiff would not have standing to bring suit at that time, the case has become moot." *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs*, 708 F.3d 921, 929 (7th Cir. 2013). As a general rule, cases or individual claims for relief become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest

---

[4] Mootness guides our analysis because plaintiffs do not seek damages in this claim. See Appellants' Br. at 41 ("Plaintiffs' cause of action under state statute 36.09(5) merely seeks to declare unlawful and enjoin future instances and effects of these kinds of unlawful actions by state agents"); *id.* at 48 ("It's not about money.").

in the outcome." See *Stotts v. Community Unit School Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

In this case, mootness stems from an application of standing requirements. Mootness is understood, subject to well-established exceptions, as "the doctrine of standing set in a time frame." *Milwaukee Police Ass'n*, 708 F.3d at 929, quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). To have standing to maintain a case in federal court, a plaintiff must establish "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). The third prong is dispositive here. An injunction or declaration at this late stage would not redress plaintiffs' alleged but stale injuries.

It is too late for an injunction. For prospective injunctive relief, plaintiffs must demonstrate a "'real and immediate' threat of future injury." *Simic*, 851 F.3d at 738, quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The plaintiffs allege infringements of their right to self-organize, but most of the events ended in 2014. A prospective injunction would be pointless. The complaint acknowledges that plaintiffs seek to revive a student government that is "moribund." Nearly four years after the last alleged wrongdoing, plaintiffs do not face any real and immediate threat of future injury. Although plaintiffs allege some continuing harms because the defendant Student Association continues to function, they fail to al-

lege that those continuing harms have stopped them from or-
ganizing on a current basis. An injunction could not redress
plaintiffs' alleged injuries.

It is also too late for a declaratory judgment because it
could do the plaintiffs no practical good. In *Milwaukee Police
Association*, we recognized that a request for a declaratory
judgment may not be moot where a defendant's ongoing pol-
icy continues to affect the parties' relationship. See 708 F.3d at
930–33. We relied on the reasoning in *Super Tire Engineering
Co. v. McCorkle*, 416 U.S. 115, 121–127 (1974), where the plain-
tiffs were employers who sought a declaratory judgment that
federal law preempted state regulations providing welfare
benefits to striking workers. The district court dismissed the
claim on the merits. After the underlying strike had ended,
the Third Circuit remanded to the district court with instruc-
tions to vacate and dismiss the entire case as moot. The Su-
preme Court reversed and held that the claim for declaratory
relief was not moot because the policy continued to affect the
parties' collective bargaining relationship. *Super Tire*, 416 U.S.
at 122–25.

Consistent with *Super Tire*, the Supreme Court and other
circuits have recognized that a party may pursue a claim for
declaratory relief where an ongoing policy has continuing ef-
fects analogous to those in *Super Tire*. See *Milwaukee Police
Ass'n*, 708 F.3d at 931.[5] When this special rule applies, and it

---

[5] At least five circuits (the D.C., Second, Fifth, Ninth, and Eleventh
Circuits) have recognized the *Super Tire* rule while finding it inapplicable
in the cases before them. See *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d
853, 868 (9th Cir. 2017) (claim for declaratory relief failed to satisfy excep-
tion because plaintiff produced no evidence that conduct "presently af-
fects him or can reasonably be expected to affect him in the future"); *Carver*

rarely does, it applies because "disputes over an ongoing policy may continue, even after the specific offense precipitating the suit has become moot." *Id.* at 930. If "a litigant challenges the policy through a declaratory judgment, then the case should proceed when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*, quoting *Super Tire*, 416 U.S. at 122. To prevail, the party seeking declaratory relief must demonstrate that the ongoing policy is a "'continuing and brooding presence'" that

---

*Middle School Gay-Straight Alliance v. School Bd. of Lake County, Florida*, 842 F.3d 1324, 1330 (11th Cir. 2016) (plaintiff student's claim for declaratory relief failed to satisfy exception because student had "no present interest, other than vindication, in a declaratory judgment"); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (recognizing ongoing policy exception but deciding case under exception for issues capable of repetition yet evading review); *Harris v. City of Houston*, 151 F.3d 186, 191 n.5 (5th Cir. 1998) (recognizing exception but declining to apply it because plaintiffs' claim for declaratory relief was not based on policy); *Nieves v. Oswald*, 498 F.2d 802, 814 (2d Cir. 1974) (recognizing exception but declining to apply it to claim for declaratory relief by inmates subject to discipline hearings after Attica prison riots because state dropped possibility of disciplinary proceedings and prison disciplinary procedures did not affect "legitimate present interests of the class members").

The Supreme Court and at least one other circuit have reached similar conclusions without citing *Super Tire*. See, e.g., *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 327–28 (2000) (claim for declaratory relief regarding electoral redistricting plan not moot because existing plan would have "probable continuing effect" as "baseline" for future redistricting plans); *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 129–30, 129 n.6 (2d Cir. 2008) (Sotomayor, J.) (claim for declaratory relief regarding lobbying reporting policy not moot even though challenged billboard had been taken down).

"'casts … a substantial adverse effect on the interests of the petitioning parties.'" *Id.*, quoting *Super Tire*, 416 U.S. at 122 (ellipsis in original).

Although plaintiffs allege an ongoing policy in the sense that the defendant Student Association continues to operate and is supported by the UWM administration, the *Super Tire* rule does not apply. At this stage, actions that the university administration and the defendant Student Association allegedly took several years ago, with several annual elections having occurred in the meantime, could no longer affect plaintiffs in a real or immediate way and are not continuing or "brooding" with a substantial adverse effect on plaintiffs' interests. See *id.* at 933 (holding that ongoing policy exception did not apply to union's challenge of employment termination procedures because policy was neither "brooding" nor substantially adverse).

More specific mootness precedents reinforce the mootness of this dispute over student government offices for terms that expired years ago. Expiration of an officeholder's expected term of office ordinarily moots claims for injunctive or declaratory relief. See *Barany v. Buller*, 707 F.2d 285, 287 (7th Cir. 1983) (plaintiff's claims for reinstatement and declaratory judgment were moot because nearly four years had elapsed since removal from one-year term of office). Plaintiffs' request for a declaratory judgment as to the 2012 and 2013 Student Association elections is moot because their terms of office expired years ago. The plaintiffs who did not resign now seek a declaratory judgment that defendants unlawfully interfered with the 2012 and 2013 elections that plaintiffs say should have resulted in their being either elected or appointed to paid positions for one-year terms. These plaintiffs had, at

most, an arguably reasonable expectation of continued employment for one year. As in *Barany*, the passage of time beyond the anticipated one-year term has "dissolved their 'personal stake' in the underlying controversy." *Id.*, quoting *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 589 (1972).

Plaintiffs also seek a declaration that old student legislation adopted by plaintiff UWM Student Association should be reinstated. But the term of office for the government that passed that legislation is up. The plaintiffs who remain on campus are free to try to persuade the current government to re-adopt old legislation or to pass new legislation. The courts should not interfere at this point.

To the extent plaintiffs seek a declaratory judgment to secure emotional satisfaction from a declaration that they were wronged, that will not save their claims from being dismissed as moot. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977), cited in *Volkman v. Ryker*, 736 F.3d 1084, 1091 n.1 (7th Cir. 2013). In *Ashcroft*, the Court declined to issue a declaratory judgment that statutes authorizing police action were unconstitutional because the plaintiff's "primary claim of a present interest in the controversy is that he will obtain emotional satisfaction from a ruling that his son's death was wrongful." 431 U.S. at 172. Here, plaintiffs seek declarations with respect to student fees and the composition and actions of the Board of Trustees toward past student government elections. A declaration would not undo the defendant Student Association's allocations of student fees or promulgation of legislation, or the actions of prior Boards of Trustees.

The claims brought by plaintiffs who have graduated are doubly moot. These plaintiffs are no longer eligible to partic-

ipate in student government and have no reasonable expectation of being governed by the defendant Student Association. See *Stotts*, 230 F.3d at 991 (suspended student's challenge to tattoo rule became moot upon by student's graduation because student had no "reasonable expectation of being subjected to the Board's appearance regulation").

Neither of the commonly invoked mootness exceptions applies. See generally *Ciarpaglini*, 817 F.3d at 544–47 (discussing exceptions for a defendant's voluntary cessation and situations capable of repetition yet evading review). Plaintiffs do not argue otherwise. Accordingly, plaintiffs' claims for injunctive and declaratory relief under their right-to-organize theory are moot.

### C. *Dismissal of Remaining Claims for Misjoinder*

The district court correctly found that the remaining claims under federal law—brought by seven plaintiffs against twenty-eight defendants about several years of conduct—were not properly joined in one lawsuit. The court found that "the only apparent topical commonality between the claims is that UWM officials allegedly committed bad acts against students." *UWM Student Ass'n*, 266 F. Supp. 3d at 1137. We agree with that observation, but the district court erred in dismissing those remaining claims with prejudice. The remedy for misjoinder of otherwise proper claims is severance or dismissal without prejudice.

An overview of the joinder rules is helpful. Rule 19 of the Federal Rules of Civil Procedure requires joinder of certain parties, but plaintiffs do not contend that joinder was required here. They rely instead on Rules 18 and 20, which can work together to allow joinder of multiple claims by multiple

plaintiffs against multiple defendants. Multiple plaintiffs may join if they assert a "right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and a "question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Multiple defendants may be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

These rules are broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes. Still, there are limits. "Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules "operate[] independently" because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first. See *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 755 n.10 (7th Cir. 2015), citing *Intercon Research Assocs., Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 56–57 (7th Cir. 1982) ("Rule 18 becomes relevant only after the requirements of Rule 20 relating to joinder of parties [have] been met").

The judge may deny joinder under Rule 20 if "the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay." 7 Wright & Miller, Federal Practice and Procedure § 1652 (3d ed.). Although Rule 18 does not contain the same limitations as Rule 20, district courts still have discretion at the pleading stage

because of Rule 21. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). District courts also have discretion to sever claims at the trial stage under Rule 42. See 6A Wright & Miller, Federal Practice and Procedure § 1586 (3d ed.) ("As a practical matter, however, Rule 18(a) must be read in conjunction with the practice under Rule 42(b), which gives the court extensive discretionary power to order separate trials of claims or issues. Whenever the court determines that this type of treatment will be conducive to the expeditious handling of the action, will promote judicial economy, or will avoid prejudice to the litigants, it may order a properly joined claim or claims to be tried separately.").

The district court acted well within its discretion in finding misjoinder here. Initially, the overarching conspiracy allegation in count six might have arguably connected the claims. With that claim dismissed, there are limited connections between the remaining claims. The district court did not abuse its discretion in finding that counts one through five and seven do not belong in the same lawsuit, and that counts one through five were not properly joined with one another.

Where we must disagree with our colleague in the district court concerns the remedy for this problem. Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21; see also *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011) (district court erred by dismissing misjoined claims). The proper remedy for violations of Rules 18 and 20 is severance or dismissal without prejudice, not dismissal with prejudice. See *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (violations of Rules 18

and 20 should be solved "by severance" or "dismissing the excess defendants under Fed. R. Civ. Pro. 21"); *Lee*, 635 F.3d at 971 ("When a federal civil action is severed, it is not dismissed. Instead, the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately.").

For these reasons, we AFFIRM the district court's dismissal of count six and all claims against defendants Dr. Michael Lovell, the Board of Regents, Heather Harbach, Pahoua Xiong, Amy Watson, Suzanne Weslow, Anthony DeWees, Nikolaus P. Rettinger III, and Carla Greve. We VACATE the dismissal of counts one through five and seven against the remaining defendants and REMAND for further proceedings consistent with this opinion.